## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| XAVIER BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:24 CV 360 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before me[1] on the Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Xavier Brown.  Brown

was charged by Superseding Indictment with four counts of wire fraud, in violation

of Title 18, United States Code, Section 1343, and one count of unauthorized use

of access device, in violation of Title 18, United States Code, Section 1029(a)(1).

ECF 80 in Criminal Case No. 4:21 CR 259 CDP.[2]  Following a three day jury trial,

Brown was found guilty on all counts.  ECF 177 in Criminal Case No. 4:21 CR

259 CDP.

_____

[1] This case and the underlying criminal case were reassigned to me.  The Honorable Ronnie L.
White, now retired, presided over Brown's trial and sentenced him.

[2] The sixth count was dismissed prior to trial upon motion of the government.  ECF 136, 140 in
Criminal Case No. 4:21 CR 259 CDP.

Brown stole merchandise from Home Depots across the country and then returned the merchandise for store credit using stolen and fake identities, resulting in a nearly $600,000 loss to Home Depot.[3]  The evidence against defendant was overwhelming, as he was caught on Home Depot security cameras in the act.

Brown was sentenced on September 27, 2022, to a term of imprisonment of 108 months on each count, with the terms to run concurrently, followed by three years of supervised release.  ECF  213 in Criminal Case No. 4:21 CR 259 CDP.

Brown appealed his conviction to the Eighth Circuit Court of Appeals, ECF 221 in Criminal Case No. 4:21 CR 259 CDP, which dismissed his appeal on December 9, 2022, for failure to prosecute.  ECF 235 in Criminal Case No. 4:21 CR 259 CDP.  The mandate issued on January 3, 2023.  ECF 236 in Criminal Case No. 4:21 CR 259 CDP.

On March 4, 2024, Brown deposited the instant motion in the mail for filing, which was received by the Court and docketed on March 8, 2024.  ECF 1.  The motion raises the following twelve claims of ineffective assistance of counsel:

 1) Failure to communicate with Brown and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial;

 2) Failure to file pretrial motions;

---

[3] Brown's scheme to defraud Home Depot involved at least 1,905 fraudulent transactions with 1,709 counterfeit operator's licenses using the identities of at least 13 victims without their knowledge or authorization.  Criminal case ECF 194 at 7.

2

3) Failure to conduct an adequate pretrial investigation;

4) Failure to attempt to negotiate a favorable plea agreement;

5) Failure to inform Brown of his trial strategy and his theory of defense;

6) Failure to subpoena and call defense witnesses on Brown's behalf;

7) Failure to properly cross-examine government witnesses to challenge their reliability and credibility;

8) Failure to discuss the Presentence Investigation Report with Brown prior to sentencing;

9) Failure to file objections to the PSR;

10) Failure to argue for mitigation of punishment and object to the sentence imposed as being substantively unreasonable;

11) Failure to communicate with Brown regarding his direct appeal; and

12) Failure to permit Brown to participate in his appeal.

ECF 1. The government opposes Brown's motion on the merits. ECF 11. Brown filed a reply brief in support of his motion, ECF 20, and the issues are fully briefed.

All of Brown's claims are meritless and will be denied for the reasons set out below.

## Discussion

### A. Need for Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Holder v. United States*, 721 F.3d 979, 993 (8th Cir.

2013) (cleaned up).  "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Id.* (cleaned up).  In conducting this inquiry, courts may dismiss allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (cleaned up).

Because Brown's claims are conclusively refuted by the extensive record in this case, they are denied without an evidentiary hearing as follows.

## B. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir.2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek postconviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to

collateral attack.").  A § 2255 motion "is intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (cleaned up).

### C. Standards Governing Ineffective Assistance of Counsel Claims

Brown claims that his attorney rendered ineffective assistance of counsel at all stages of the proceedings.  The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Brown must prove two elements.  First, he "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  When evaluating performance, "judicial scrutiny must be highly deferential." *Id.* at 689 (cleaned up).  The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error.  *Id.* Second, Brown "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The court need not address both components if Brown makes an

insufficient showing on one of the prongs. *Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995).

To resolve Brown's claims I have reviewed the record in the underlying criminal case and note Brown's obstreperous behavior with the Court and counsel throughout this case. Brown repeatedly rejected appointment of counsel and then refused to cooperate with Andrew Sottile once he was appointed as counsel. Brown made numerous meritless arguments both in pro se filings and in person during hearings with the Court, including insisting that he was not the defendant in the case and refusing to answer the Court's questions or even accept mail from the Court, his counsel, or the government. At the start of trial, Brown suddenly reversed course and sought appointment of counsel, resulting in a delay of the trial. But less than a month later Brown was again refusing to cooperate with Sottile and claiming that he no longer wanted counsel to represent him. During an April status conference, Brown was removed from the courtroom due to his noncompliance with the Court's instructions and disruptive behavior, resulting in a revocation of his bond. Based on Brown's behavior, his motion to refuse appointed counsel was denied and Sottile represented him at trial.

It is against this background that I evaluate counsel's performance in this case.

## D. Grounds 1-4: Ineffective Assistance of Counsel in Pretrial Proceedings

Brown first argues that his counsel was ineffective during pretrial proceedings for failing to (1) communicate with him and correctly advise him regarding the consequences of pleading guilty as opposed to proceeding to trial; (2) file any pretrial motions; (3) conduct a pretrial investigation; and (4) attempt to negotiate a favorable plea agreement.  To the extent that these grounds (or any other ground) depend upon counsel's alleged failure to communicate with Brown, they are conclusively refuted by the record which demonstrates that it was Brown who repeatedly refused to communicate with counsel throughout the case, not the other way around.

Federal Public Defender Kevin Gau initially entered an appearance as Brown's attorney on May 21, 2021.  ECF 18 in Criminal Case No. 4:21 CR 259 CDP.  At a status conference on August 4, 2021, Brown indicated that he did not want any appointed counsel to represent him and requested time to retain private counsel.  ECF 29 in Criminal Case No. 4:21 CR 259 CDP.  The Court granted Brown time to retain private counsel and granted Gau's motion to withdraw as counsel.  ECF 32 in Criminal Case No. 4:21 CR 259 CDP.  Yet Brown never retained private counsel.

On October 1, 2021, the Court conducted a *Faretta* hearing.[4]  ECF 60 in Criminal Case No. 4:21 CR 259 CDP.  At that hearing, Brown refused appointed counsel but also refused to waive his right to the assistance of counsel.  ECF 60 in Criminal Case No. 4:21 CR 259 CDP.  The Court then found that Brown had waived his right to the assistance of counsel and would represent himself.  *Id*.  The Court appointed standby counsel Andrew Sottile.  ECF 63 in Criminal Case No. 4:21 CR 259 CDP.  The parameters of counsel's duties as standby counsel were laid out in the Court's October 5, 2021 Order Concerning Self-Representation as follows:

> The Court is appointing standby counsel from the CJA Panel to protect the Court's interest in fair and orderly proceedings.  The Court's appointment of counsel is to aid Mr. Brown if, and when, he requests help, and to be available to represent Mr. Brown in the event termination of his self-representation is necessary.  Standby counsel will relieve the Court of the need to explain and enforce basic rules of courtroom protocol or to assist Mr. Brown in overcoming routine obstacles that stand in the way of achieving his own clearly indicated goals.

ECF 64 at 7 in Criminal Case No. 4:21 CR 259 CDP.

Between October 5, 2021, and October 20, 2021, Brown filed twelve pro se documents with the Court, including a demand for bill of particulars and multiple "notices" which challenged the jurisdiction of the Court, rejected appointment of

---

[4] A *Faretta* hearing is an evidentiary hearing to determine if a defendant who has clearly and unequivocally asserted his right to self-representation has knowingly and intelligently waived counsel after being informed of the dangers and disadvantages of self-representation.  *Bilauski v. Steele*, 754 F.3d 519, 522 (8th Cir. 2014) (citing *Faretta v. California*, 422 U.S. 806 (1975)).

counsel, "objected to entry of any plea," and indicated that his first name was spelled Xaiviar, not Xavier.[5]  ECF 65, 67-77 in Criminal Case No. 4:21 CR 259 CDP.   On November 3, 2021, a federal Grand Jury then superseded the indictment to include another spelling of Brown's name—Xaiviar Brown—and add a sixth count for interstate transportation of goods, in violation of Title 18, United States Code, Section 2314.  ECF 80 in Criminal Case No. 4:21 CR 259 CDP.  Between December 3, 2021, and December 7, 2021, Brown filed nine more pro se documents, including "updated" jurisdictional challenges and objections to the entry of any plea.  ECF 83 – 92 in Criminal Case No. 4:21 CR 259 CDP.  At his December 8, 2021, arraignment, Brown refused to answer the Court's questions.  ECF 90 in Criminal Case No. 4:21 CR 259 CDP.

On January 7, 2022, United States Magistrate Judge Stephen R. Welby issued his Report and Recommendations recommending denial of all relief requested by Brown. ECF 104 in Criminal Case No. 4:21 CR 259 CDP.  That same day, Judge White set Brown's trial for February 28, 2022.  ECF 105 in Criminal Case No. 4:21 CR 259 CDP.  Judge White adopted the Report and Recommendation in its entirety on January 25, 2022.  ECF 107 in Criminal Case No. 4:21 CR 259 CDP.  Because all Court mail sent to Brown at his address of record was returned as undeliverable, the Court asked the Pretrial Services Office

---

[5] Petitioner consistently spells his name "Xavier" in this action.

to investigate and confirm Brown's home address.  The Pretrial Services Office

filed an Informational Report on February 17, 2022, confirming that the address of

record listed on the docket sheet for Brown was, in fact, his home address.  ECF

119 in Criminal Case No. 4:21 CR 259 CDP.  When the Pretrial Services Office

asked Brown if he was refusing Court mail, he became irate and told the officer

that "you do not have the lawful right to ask or tell me what I do should or

shouldn't be doing in my private time concerning USPS mail.  I refuse to answer

any of those questions concerning my right to except or refuse my private mail."

*Id.*  The Pretrial Services Officer concluded that Brown was intentionally refusing

mail delivery from the Court at his home address.  *Id.*

On February 23, 2022, Judge White held *Faretta* and *Frye*[6] hearings in

Brown's case.  ECF 126 in Criminal Case No. 4:21 CR 259 CDP.  Brown appeared

pro se with standby counsel.  *Id.*  Brown repeatedly asserted that he was not the

defendant in the case and refused to answer any of the Court's questions.  *Id.*  He

again stated that he would not accept appointed counsel, so Brown remained pro se

with standby counsel.  *Id.*  Counsel for the government explained the plea offer it

attempted to extend to Brown by sending him a certified letter, but he refused to

---

[6] So named after the United States Supreme Court's decision *Missouri v. Frye*, 566 U.S. 134 (2012), *Frye* hearings are designed to make a record of formal plea offers made to a defendant and the defendant's acceptance or rejection of such an offer.  The transcript of this hearing appears in the record as ECF 157.

accept it.  *Id*.  Brown stated that he would not enter a contract with the United States.  *Id*.  In court, Brown refused to accept the written plea offer from the hands of the Assistant United States Attorney.  ECF 157 at 18-19 in Criminal Case No. 4:21 CR 259 CDP.  That plea offer expired on February 22, 2022, but the government was willing to speak to Brown about it at the hearing to resolve his case that day.  *Id.* at 20.  Brown, however, refused to speak to the Assistant United States Attorney or acknowledge the plea offer.  *Id.* at 20-24.

Brown also refused to accept the discovery in the case from the Assistant United States attorney or his counsel, and he would not pick it up from counsel table.  *Id.* at 25-27.  At the conclusion of the hearing, the Court denied Brown's request for a continuance of the trial and set a final pretrial conference for February 28, 2022, the first day of trial.  *Id.* at 28-29.  By Order, Judge White also instructed Brown that he was required to follow his Judge's Requirements during the trial. ECF 128 in Criminal Case No. 4:21 CR 259 CDP.

On February 25, 2022, the government filed a letter outlining three unsuccessful attempts to provide to discovery to Brown, who refused to accept the discovery on each occasion. ECF 130 in Criminal Case No. 4:21 CR 259 CDP. The government also moved to dismiss count Six of the Superseding Indictment. ECF 136 in Criminal Case No. 4:21 CR 259 CDP.  That same day, Brown filed a

Notice of Conditional Acceptance of Counsel and a lack of ability to proceed without assistance of counsel.  ECF 131 in Criminal Case No. 4:21 CR 259 CDP.

On February 28, 2022, the first day of trial, Brown sought a continuance. ECF 139 in Criminal Case No. 4:21 CR 259 CDP.  It was denied.  ECF 140 in Criminal Case No. 4:21 CR 259 CDP.  At the final *Faretta* hearing before trial, Brown again stated that he did not want appointed counsel and that he was not the defendant in the case.  ECF 141 in Criminal Case No. 4:21 CR 259 CDP. However, after a brief recess, standby counsel then advised the Court that Brown was suddenly requesting appointment of counsel to represent him for trial.  *Id.*  The Court then appointed Sottile to represent Brown at trial and continued the trial to May 2, 2022.  ECF 142 in Criminal Case No. 4:21 CR 259 CDP.

But less than one month later, Brown had changed his mind and on March 18, 2022, Sottile filed a Status Report indicating that Brown no longer wanted counsel to represent him.  ECF 143 in Criminal Case No. 4:21 CR 259 CDP.  On March 25, 2022, Brown filed yet another notice of his refusal to accept appointment of counsel.  ECF 147 in Criminal Case No. 4:21 CR 259 CDP.  He then began filing more pro se documents asserting jurisdictional and other challenges to his case.  ECF 148-50 in Criminal Case No. 4:21 CR 259 CDP.  And he continued to refuse mail from the Court.  ECF 151 in Criminal Case No. 4:21 CR 259 CDP.  The Court therefore set a hearing for April 6, 2022, to determine if

Brown was reasserting his right to self-representation.  ECF 152 in Criminal Case No. 4:21 CR 259 CDP.

At the hearing, Brown was asked to leave the courtroom due to his noncompliance with the Court's instructions and disruptive outbursts. ECF 158 in Criminal Case No. 4:21 CR 259 CDP.  After a sealed discussion with appointed counsel, the Court denied Brown's refusal of appointed counsel and set a final pretrial conference for April 27, 2022.  *Id.*

Brown refused to sit at counsel table for the pretrial conference on April 27, 2022, and had to be escorted there by the United States Marshal Service.  ECF 165 in Criminal Case No. 4:21 CR 259 CDP.[7]  Because Brown was disruptive,[8] he was eventually ordered removed from the courtroom and his bond was revoked due to contempt.  *Id.*

The trial lasted three days.  ECF 227, 229-30 in Criminal Case No. 4:21 CR 259 CDP.  During the trial, Brown refused to acknowledge Sottile as counsel and interjected throughout the proceedings.  *See, e.g.*, ECF 227 at 3-7, 84-86, 90; ECF 229 at 3-4, 211, 264 in Criminal Case No. 4:21 CR 259 CDP.  He refused to change out of his prison jumpsuit for trial or answer the Court's questions about

---

[7] The transcript of the final pretrial conference appears in the record as ECF 226.

[8] Among other things, Brown continually interrupted Judge White and told him that he didn't "have jurisdiction to tell me nothing."  ECF 226 at 7.  Brown also claimed to be "the highest officer in this court."  *Id.*

his right not to testify.  ECF 227 at 3-7; ECF 229 at 350-51 in Criminal Case No. 4:21 CR 259 CDP.  The government called five witnesses and introduced, among other evidence, video surveillance of defendant committing the crimes.  Defendant called no witnesses and did not testify.  After less than one hour of deliberations, the jury found Brown guilty on all counts.  ECF 174 in Criminal Case No. 4:21 CR 259 CDP.

Ground 1 of Brown's § 2255 motion—that Sottile was ineffective for failing to communicate with him and correctly advise him regarding the consequences of pleading guilty and failing to engage in plea negotiations—is summarily denied as the foregoing conclusively demonstrates that Brown steadfastly refused to communicate with counsel; therefore, any failure to communicate is attributable solely to Brown, not counsel.

Moreover, Brown cannot show deficient performance in pretrial proceedings as Sottile was not counsel of record until the date of the first trial setting (February 25, 2022), which was after the government's plea offer to Brown had expired. ECF 157 at in Criminal Case No. 4:21 CR 259 CDP (plea offer expired on February 22, 2022, but the government agreed to extend it to February 23, 2022 if Brown accepted that day).  Until that time, he was only standby counsel and that role was limited by the Court to aiding Brown if he requested help, explaining rules of courtroom protocol, and assisting him with overcoming "routine obstacles

14

that stand in the way of his achieving his own clearly indicated goals."  ECF 64 at

7 in Criminal Case No. 4:21 CR 259 CDP.  Advice about plea agreements was

therefore outside the ambit of his standby appointment, particularly where there is

no allegation that Brown ever sought Sottile's assistance with respect to plea

agreements (or anything else).  Such an allegation would be directly refuted by the

record, which clearly indicates that Brown refused to discuss anything with Sottile

or even allow the government to present him with a plea agreement.[9]  ECF 157 19-

24, 27 in Criminal Case No. 4:21 CR 259 CDP.  (Sottile informed the Court that

"Mr. Brown basically told me he did not want to communicate with me in any

way.").

     To the extent Brown argues that Sottile should have performed functions

required of appointed counsel when he was only standby counsel, essentially

acting as his co-counsel, the argument fails as "[t]here is no constitutional right to

hybrid representation."  *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir.

1998); *see also United States v. Lemicy,* 122 F.4th 298, 305–06 (8th Cir. 2024)

(district court acted within its discretion in not allowing a pro se defendant to act as

"co-counsel" with his standby counsel).  "A defendant does not have a

---

[9] Because Brown was representing himself, the Court questioned him, not counsel, about plea offers made to him during the *Faretta* hearing.  *Id.* at 17 (noting that while counsel normally has a duty to communicate formal plea offers from government, "in this case since you're proceeding pro se, I will ask you questions about it.")

constitutional right to choreograph special appearances by counsel." *Einfeldt*, 138 F.3d at 378 (cleaned up).  Once standby counsel is appointed, the role of standby counsel falls within the discretion of the district court, and Brown was not permitted to pick and choose instances in which he would be represented by counsel instead of representing himself pro se.  The record shows that Brown understood the expectations and difficulties of self-representation and knew the restrictions on standby counsel's role prior to waiving his right to counsel.  With this knowledge, Brown elected to proceed *pro se* until the eve of trial.  As such, Brown cannot demonstrate that counsel was ineffective for failing to perform functions required of appointed counsel when he was only standby counsel.  Ground 1 is denied as meritless.

Ground 2 fails for similar reasons.  Although Brown claims counsel was ineffective for failing to file pretrial motions, as Sottile was merely standby counsel when pretrial motions were due on December 8, 2021, it was Brown's responsibility—not Sottile's—as a pro se defendant to file all pretrial motions.[10] Brown therefore cannot demonstrate that Sottile was ineffective for failing to file pretrial motions as a matter of law.  To the extent Brown argues that Sottile should have filed a motion for evidence of other crimes, wrongs, or acts the government

---

[10] Brown was specifically advised that it was his obligation to file pretrial motions in the Court's Order Concerning Self-Representation.  ECF 64 in Criminal Case No. 4:21 CR 259 CDP.

may attempt to introduce under Fed. R. Evid. 404(b) and/or *Brady*[11] materials after

he became appointed counsel, such motions were unnecessary given that the

government had already indicated its intent to introduce the 404(b) material

provided in discovery and the Court had already ordered disclosure of *Brady*

materials.  ECF 123, 9 in Criminal Case No. 4:21 CR 259 CDP.  As for Brown's

assertion that Sottile should have filed a motion to challenge the Court's

jurisdiction, the argument fails as any such motion would have been denied as

meritless, just as all four of Brown's previous jurisdictional motions were denied.[12]

"Counsel's failure to advance a meritless argument cannot constitute ineffective

assistance." *Rodriquez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).  Ground

2 is denied as meritless.

In Ground 3, Brown argues that Sottile was ineffective for failing to conduct

an adequate pretrial investigation.  Brown argues that Sottile failed to conduct any

reasonable independent pretrial investigation to challenge his theft conviction that

occurred on July 16, 2020, in Columbus, Ohio. The government introduced this

404(b) evidence at trial after proper notice.  ECF 123 at in Criminal Case No. 4:21

---

[11] *Brady* materials refers to evidence favorable to an accused which must be disclosed by the prosecution prior to trial as set out in the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[12] Brown's numerous challenges to the Court's jurisdiction all stem from his "sovereign citizen" type arguments advanced in his numerous pretrial filings.  ECF 104 in in Criminal Case No. 4:21 CR 259 CDP.

CR 259 CDP.  At trial, Home Depot's asset protection employee Othman Jallaq testified that he witnessed Brown steal the items from the Ohio store, detained him, and called the police.  The video footage of Brown's theft was also played for the jury.  ECF 229 at 220-64 in Criminal Case No. 4:21 CR 259 CDP.  Police then obtained a warrant to search Brown's van and uncovered more stolen merchandise.  Detective Scott Randle was the investigating officer who applied for and executed the search warrant for Brown's van.  Detective Randle photographed all the evidence recovered from Brown's van, including more stolen Home Depot merchandise.  He also testified at trial, and the photographs were introduced at trial.  ECF 229 at 264-80 in Criminal Case No. 4:21 CR 259 CDP.

Although Brown argues that Sottile should have investigated the search warrant in the Ohio case, this argument fails to establish any resulting prejudice as the search warrant was provided to the defense in discovery (a fact Brown would have known had he actually accepted the discovery provided to him) and Brown pled guilty to the offense on March 10, 2021.  *Id.*  Thus any challenge to the search warrant in the Ohio case would have been denied as meritless and cannot serve as the basis for an ineffective assistance of counsel claim.  *See Rodriquez*, 17 F.3d at 226.  Moreover, at trial Sottile cross-examined Detective Randle about his collection of evidence during the execution of the warrant.  ECF 229 at 279-80 in Criminal Case No. 4:21 CR 259 CDP.  Under these circumstances, Brown has

failed to establish any resulting prejudice from Sottile's alleged failure to investigate evidence properly introduced at trial.

Brown's conclusory assertion that Sottile was ineffective for failing to interview, subpoena, and call unnamed witnesses without identifying the witnesses or summarizing their testimony and its relevance to his defense is insufficient to demonstrate ineffective assistance as a matter of law. *See Armstrong v. Kemna*, 534 F.3d 857, 867–68 (8th Cir. 2008) (without a specific, affirmative showing as to what the missing evidence or testimony would have been, court cannot determine whether the petitioner was prejudiced by any alleged deficiencies in counsel's performance). Furthermore, the claim fails because Brown has not shown "a reasonable possibility that the outcome of the trial would have been different absent the alleged deficiency of counsel's performance." *Jackson v. United* States, 956 F.3d 1001, 1007 (8th Cir. 2020). Given the overwhelming evidence of Brown's guilt—which was captured on video surveillance—the likelihood of a different outcome in this case based on pretrial investigation or the interviewing of witnesses for Brown is highly unlikely and does not meet the reasonable possibility required to demonstrate deficient performance on the part of counsel. Ground 3 is denied.

Ground 4 is related to Ground 1 in that Brown alleges that Sottile failed to negotiate a favorable plea agreement. "The Sixth Amendment right to effective

19

assistance of counsel includes representation during the plea bargaining process."
*Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (citing *Missouri v.
Frye*, 566 U.S. 134, 143-47 (2012)).  "[T]he negotiation of a plea bargain is a
critical phase of litigation for purposes of the Sixth Amendment right to effective
assistance of counsel."  *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373
(2010)).  "If a plea bargain has been offered, a defendant has the right to effective
assistance of counsel in considering whether to accept it."  *Id.* (quoting *Lafler v.
Cooper*, 566 U.S. 156, 168 (2012)).  "[A]s a general rule, defense counsel has the
duty to communicate formal offers from the prosecution to accept a plea on terms
and conditions that may be favorable to the accused."  *Frye*, 566 U.S. at 145.
Where "defense counsel allowed a formal plea offer to expire without advising the
defendant or allowing him to consider it, defense counsel did not render the
effective assistance the Constitution requires."  *Id.*

Brown's claim fails because the only plea offer was made to Brown when he
was representing himself.  As the facts demonstrate, Brown steadfastly refused to
even acknowledge the existence of a plea offer, much less discuss it or seek advice
about its contents from standby counsel, with whom he refused all communication.
That offer had expired by the time Sottile was appointed to represent Brown at
trial, and there is no indication in the record that the government intended to make
another deal or negotiate further after Brown's unequivocal rejection of any plea

deal during the *Frye* hearing.  Brown has therefore failed to establish ineffective assistance of trial counsel based on defense counsel's representation with respect to plea negotiations.  Ground 4 is denied.

### E. Grounds 5-10: Ineffective Assistance of Counsel During Trial

In Ground 5, Brown alleges that Sottile was ineffective for failing to inform him of his trial strategy and his theory of defense.  Brown argues that he was not provided with clear strategy on how his counsel would attack the case.  Furthermore, he argues that trial counsel failed to challenge the search warrant, suppress the testimony of Detective Scott Randle based on his failure to obtain a search warrant and challenge the government's proof of service of discovery.

As stated above, any claim which rests on an alleged failure to communicate by counsel is conclusively refuted by the record.  Brown repeatedly stated that he did not want appointed counsel and refused to communicate with Sottile.   This continued even after Sottile was appointed, at Brown's request, to represent him at trial.  Shortly after Sottile's appointment as trial counsel, on March 18, 2022, Sottile informed the Court that Brown no longer wanted his representation.  ECF 143 in Criminal Case No. 4:21 CR 259 CDP.  In Brown's Notice to Judge Refusing Appointed Counsel filed on March 25, 2022, Brown stated, "I refuse to cooperate with the attorney Andy Sottile who has previously filed documents without a voluntary signed contract or prior consent signed by a defendant."  ECF

147 in Criminal Case No. 4:21 CR 259 CDP.  At the final pretrial conference on

April 27, 2022, Brown repeatedly denied that Sottile was his attorney.  ECF 226 at

2-6  in Criminal Case No. 4:21 CR 259 CDP.  Brown refused to speak with Sottile

up to and including the day of trial on May 2, 2022.  The following occurred on the

record on the first day of trial:

> THE COURT: Mr. Sottile, if you had an opportunity to speak with Mr.
> Brown about changing clothes?
>
> MR. SOTTILE: Your Honor, I attempted to speak with him and he would
> not speak with me.
>
> THE COURT: Did you say to him specifically that he could change clothes
> and that it was in his best interests to change clothes?
>
> MR. SOTTILE: We never got that far. He started yelling and causing a
> disturbance, so I left the area.

ECF 227 at 2-3 in Criminal Case No. 4:21 CR 259 CDP.  Any failures to

communicate about trial strategy are attributable solely to Brown and cannot be

imputed to counsel.

Moreover, the record reflects that despite Brown's obstreperous behavior,

Sottile continued to communicate with Brown regarding trial strategy.  In his

August 22, 2022, Notice of Ineffective Assistance of Counsel, Brown admits that

he discussed his idea of defending the case on the basis that he is "a living man"

and not the defendant based upon the spelling of his name with Sottile, who

(correctly) advised him that these arguments were not viable defenses to the case.

22

ECF 192 in Criminal Case No. 4:21 CR 259.  In this document, Brown goes on to state that he specifically discussed the evidence and testimony supporting the Ohio theft conviction with Sottile.  *Id.*  That Brown disliked Sottile's advice and his decision not to advance Brown's meritless arguments at trial does not render counsel's assistance ineffective as a matter of law.

The same is true of Sottile's decision not to raise Brown's other meritless arguments at trial regarding the government's proof of service of discovery. Brown's repeated refusal to accept documents relating to this case from the government, the Court, and counsel are well-documented in the record and demonstrate that Sottile's refusal to raise this issue with the Court or at trial was not deficient performance.

Brown's arguments respecting the Ohio case and Sottile's cross-examination of Detective Randle are discussed above in connection with Ground 3 and are denied here for the same reasons.  Ground 5 of Brown's motion fails.

Ground 6 is duplicative of Ground 3 and is denied for the same reasons.

In Ground 7, Brown argues in general terms that Sottile failed to properly cross-examine government witnesses to challenge their reliability and credibility. Yet he does not specify what impeachment or other evidence Sottile should have elicited from any specific witness on cross-examination.  Decisions involving trial strategy are virtually unchallengeable.  *Link v. Luebbers,* 469 F.3d 1197, 1204 (8th

Cir. 2006).   Here, the record demonstrates that Sottile cross-examined each of the government's witnesses thoroughly and challenged the sufficiency of the government's evidence during closing argument.  *Id.*  In the absence of any specific allegations of deficient performance and in the face of overwhelming evidence of Brown's guilt, Brown has failed to demonstrate that Sottile's cross-examination of witnesses at trial constituted deficient performance or resulted in the requisite prejudice sufficient to demonstrate ineffective assistance of counsel. Ground 7 of Brown's motion fails.

Grounds 8-10 relate to Sottile's representation of Brown at sentencing.  In Ground 8, Brown alleges that Sottile failed to discuss the Presentence Investigation Report with him prior to sentencing or explain the sentencing calculations in the PSR.  In Ground 9, Brown argues that Sottile was ineffective for failing to file objections to the PSR.  And in Ground 10, Brown contends that Sottile was ineffective for failing to argue for mitigation of punishment and object to the sentence imposed as being substantively unreasonable.

Once again, any alleged failure to communicate with Brown about the PSR or sentencing issues is attributable solely to Brown, not Sottile.  At the sentencing hearing, Judge White held the following exchange with counsel and Brown:

> THE COURT: Have you and Mr. Sottile had an opportunity to read and discuss your Presentence Report?

24

THE DEFENDANT: I haven't discussed anything about a Presentence Report with him.

THE COURT: Are there any objections as to the factual accuracy of the report?

MS. LANE: No, Your Honor.

THE COURT: Mr. Sottile?

MR. SOTTILE: Your Honor, I've read the Presentence Report and I personally drove down to Sainte Genevieve to give Mr. Brown a copy of the Presentence Report and he refused to meet with me or accept the copy. I have read it. I did not file any objections but I do not believe Mr. Brown has, either.

ECF 231 at 4 in Criminal Case No. 4:21 CR 259.   Brown also again disputed Sottile's representation of him claiming that Sottile "doesn't have a contract with me." *Id.*  He also continued to insist that he was not the defendant in the case. *Id.* at 3.  As previously stated, Brown's refusal to accept a copy of the PSR or discuss its contents with Sottile prior to sentencing forecloses any claim of ineffective assistance of counsel for failure to communicate.  Ground 8 of Brown's § 2255 motion fails.

As for Ground 9, Brown cannot demonstrate that he was prejudiced by Sottile's failure to file objections to the PSR when Brown refused to review or discuss its contents with him.  Nevertheless, even without input from Brown Sottile independently reviewed the PSR and determined that there were no valid objections.  Although Brown argues that Sottile should have objected to the

inclusion of the specific offense characteristics as to the loss amount and the ten or more victims in this case, these objections would have been overruled as the government proved each of the specific offense characteristics at trial.  And even though Sottile did not file objections to the PSR, he still argued at sentencing that Brown's criminal history was overstated in an attempt to secure a lower sentence for Brown.  ECF 231 at 9 in Criminal Case No. 4:21 CR 259.  That the Court ultimately rejected the arguments and sentenced Brown to the top end of the Guidelines range for his crimes does not demonstrate that Sottile was constitutionally ineffective for failing to object to the PSR.  Ground 9 of Brown's § 2255 motion fails.

Ground 10 fails because Sottile filed a Sentencing Memorandum requesting a downward variance and a sentence of 55 months.  ECF 199 in Criminal Case No. 4:21 CR 259.  Additionally, at the sentencing hearing Sottile argued for mitigation over the continued objection of Brown:

> THE COURT: Mr. Sottile, do you wish to make a statement or present any information in mitigation of the sentence?
>
> MR. SOTTILE: Yes, Your Honor. Thank you. As the Court's aware, I filed a Sentencing Memorandum in this case and I was able to speak with a couple family members to verify information for that and after speaking with them, I prepared the Sentencing Memorandum.  As the Court is aware, I'm asking the Court to consider a downward variance in this case.  I'd ask the Court to consider 55 months.  The reason why I ask the Court to consider this under the 3553 factors is that I learned Mr. Brown, when he grew up, he grew up in very difficult circumstances.  His father was only present till he

was about six years old.  When he was present, he was violent towards his mother. Mr. Brown witnessed violence from his father towards his mother.

THE DEFENDANT: I object.  That's not, that's not correct.

MR. SOTTILE: So Mr. Brown witnessed that as a young child. His father, then, around the age of six, was not present. his mother remarried and, unfortunately, his stepfather was also abusive towards Mr. Brown's mother and, in fact, towards Mr. Brown himself, on a couple of occasions hitting him, and one time he actually hit him in the head with the butt of a gun. so he grew up in very difficult circumstances.  Additionally, when Mr. Brown was nine or ten years old, his stepfather committed thefts at retail stores and, in fact, had Mr. Brown act as a lookout.

THE DEFENDANT: I object. That's not true.

MR. SOTTILE: Again, Your Honor, that's terrible circumstances for someone to grow up in. I don't –

THE DEFENDANT: I have no clue what he's talking about.

MR. SOTTILE: And, Your Honor, I verified this with family members.

THE DEFENDANT: What family member did you verify with?

THE COURT: Mr. Sottile.

MR. SOTTILE: I'm sorry, Your Honor?

THE COURT: You may continue.

MR. SOTTILE: Thank you.

THE DEFENDANT: Excuse me, Your Honor. With all due respect, what family member?  What's the name of the family member?

THE COURT: Mr. Sottile, you can continue.

MR. SOTTILE: Thank you, Your Honor. Your Honor, I would submit to the Court that those are very difficult circumstances for a young man to grow up in.

THE DEFENDANT: I object.

MR. SOTTILE: Witnessing criminal behavior, both violence and actually being used as a participant in thefts, I can't imagine a more difficult situation for –

THE DEFENDANT: Excuse me.

MR. SOTTILE: – a young person. In addition –

THE DEFENDANT: Excuse me, Mr. Sottile.  You do not have a contract with me. Is this an Article 3 court?

THE COURT: Mr. Brown, if you want –

THE DEFENDANT: Is this an Article III court, Your Honor?

THE COURT: – if you want to remain in here, you're going to have to be quiet so we can get through your sentencing.

THE DEFENDANT: Is this an Article III court created by a constitutional entity, since it has to be one or the other?

THE COURT: Continue.

MR. SOTTILE: Thank you, Your Honor.  In addition, Mr. Brown witnessed shootings when he was a child.  They grew up in the housing projects.  He also witnessed drug dealing at a very young age.  At times his family was homeless. I would submit to the Court that these are, indeed, very valid 3553(a) factors that the Court should consider in fashioning a sentence in regard to this. I would also, Your Honor, point out –

THE DEFENDANT: I object. My mother is in the courtroom, sir.

MR. SOTTILE: Your Honor –

THE DEFENDANT: I object.

MR. SOTTILE: – I would also point out, Your Honor –

THE DEFENDANT: That's not true.

MR. SOTTILE: – Mr. Brown's Criminal History Category was a IV.  He only had two criminal history points for prior convictions. Two points were added because he was on supervision at the time of this offense. He had pled guilty to a misdemeanor about a year before these events occurred.  So I would submit to the Court – and it was a stealing from a Lowe's that, although it's not in the same course of conduct, basically is the same course of conduct. And if not for –

THE DEFENDANT: It can't be both if you just said it wasn't.

MR. SOTTILE: – if not for the charging document listing those dates, it would have been part of this course of conduct and, as such, he would have been a Criminal History II if those two points would not have counted, and he would have been looking at a sentence of 78 to 97 months.  So I would argue that there is an overstatement of his criminal history.  I would still be arguing the Court to consider a downward variance, irrespective of whether his Criminal History was a II or a III, based on the factors that I have enumerated.  So for those reasons, Your Honor, I ask the Court to consider a downward variance in this case.  Thank you.

ECF 231 at 5-9 in Criminal Case No. 4:21 CR 259.

Given that Sottile requested a downward variance and presented evidence of mitigation—even over Brown's objections—counsel's performance was not constitutionally deficient as a matter of law.  Ground 10 of Brown's § 2255 motion fails.

### F. Grounds 11-12: Ineffective Assistance of Appellate Counsel

Brown's final two grounds for relief allege ineffective assistance of appellate counsel.  In Ground 11, Brown alleges that Sottile failure to communicate with him regarding his direct appeal, and in Ground 12 Brown claims that counsel did not permit him to participate in his appeal.  These claims are summarily denied as Brown admits that " in this case, Sottile did inform Brown of his right to file a direct appeal.  As such, Brown declined and filed it himself (pro se)."[13]  ECF 3 at 27.   Sottile did not represent Brown on appeal, and no other attorney was appointed to represent him on appeal.  *See* ECF 235 in in Criminal Case No. 4:21 CR 259 (Judgment from the 8th Circuit dismissing Brown's pro se appeal for failure to prosecute and denying his motion for appointment of counsel as moot).   As such, Brown's claims for ineffective assistance of appellate counsel fail as a matter of law.  Grounds 11 and 12 of Brown's § 2255 motion are denied.

### G. I Will Not Issue a Certificate of Appealability

As Brown has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable

---

[13] When the Court advised Brown of his appeal rights at sentencing, Brown stated "I would not like Andy Sottile on the case."  ECF 231 at 19 in Criminal Case No. 4:21 CR 259.

jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

## Conclusion

Brown treated the case against him like one of his scams, thinking he could somehow avoid conviction by pretending he wasn't the defendant and continually delaying the trial through his tactics.  Not surprisingly, it didn't work.  And now that Brown is serving a lengthy prison sentence, he has decided to blame counsel for his predicament, insisting that his lawyer failed in his defense of this case.  As Brown represented himself until trial, any failings in pretrial proceedings lie squarely at his feet, not counsel's.  And because Brown continually refused to even talk, much less cooperate, with counsel during the pendency of his case, any alleged deficiencies in counsel's performance are the fault of Brown's, and Brown's alone.

Accordingly,

**IT IS HEREBY ORDERED** that Xavier Brown's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Brown has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2025.